Ruffin, C. J,
 

 The declaration is in debt for $948,12 2-3. Plea,- nil debet. ’ It was submitted to the Superior Court upon a case agreed, with a provision for an appeal to this Court by either party. The facts" are as follows; In March
 
 *305
 
 1842, the County Court of Lincoln laid* a tax for the purpose of raising a fund for building a Court House and Jail-in that County. In the session of 1842, the General As--sembly passed an act establishing Catawba County out of a portion of Lincoln, and by a supplemental act of the same year, ch. 9th, it was enacted, that the County trustee of' Catawba, or such officer as the County Court of that coun-. ty might appoint, should be authorised to demand and re-, ceive from the County trustee, or such officer- of Lincoln county as might have the fund in charge, such amounts as. had be.en collected from the citizens resident within the bounds of Catawba, for the purpose of erecting a new CourtHouse in Lincoln, and that the trustee or o'thez such officer of Lincoln should pay over on demand said amount thus, collected from and paid by the inhabitants of Catawba. At the time of passing the acts of 1842, a part of the fund, to. wit, $1200, had been collected from the citizens of that part of Lincoln, which formed Cataw.ba, and from the other eit-. izens of Lincoln. The County trustee of Catawba in 1843-brought an action against the Sheriff of Lincoln, who then had the fund in charge for a certain part thereof as the proportion to which Catawba was entitled under the act above mentioned; and the same pended, sometime and. before the erection of Gaston County, as herein after mentioned,when It abated by the death of the Sheriff, and it has not been re-, vived nor any new action brought.
 

 At the Session of 1846 the Assembly established Gaston, County out of a portion of the remaining territory of Lin-, coin on- the South, and re-annexed to. Lincoln on the other-side a part of the territory, which constituted Catawba. — ,. By a supplemental act of that session, ch. 25th,, it was enacted, that the county trustee, or such officer as the County Court of Gaston might appoint, should be authorised to demand and recover irom the Treasurer of public buildings,, or .such officer of Lincoln as. might .have the fund in charge,, two-thirds of all the moneys, which, had then been collected.
 
 *306
 
 from the citizens resident within the limits of Lincoln, since March 1842, for the purpose of erecting a new Court-house and Jail in Lincoln; and that the treasurer of public buildings, or such officer of Lincoln, should pay over, on demand, to the county trustee, or to such officer as the County Court of Gaston might appoint, two-thirds of the said moneys; and that on failure of such officer of Lincoln to pay over two-thirds of the moneys as aforesaid, the county trustee, or such officer as the County Court of Gaston might appoint, was authorised to sue for and recover the same — to be appropriated to the building of a Court-house and Jail in the county of Gaston. The whole sum raised under the order of Lincoln County Court, made at March Term, 1842, was #2723,52 1-2; whereof the sum of #1200 had been applied by order of the County Court in payment of the debts of Lincoln County, before the passing of the said acts of 1846, establishing Gaston and supplemental thereto. On the 3d of March, 1847, the defendant was appointed Treasurer of public buildings for Lincoln, and received from the former Treasurer, as part of the said fund, the sum of forty cents in cash, and bonds given by sundry persons to the amount of #1421,79 1-2, then due, and he held the same on the 5th day of the same month, when the present plaintiff demanded of him the sum of $¡1815,68, as the two thirds of the whole fund of $2723,52, to which the plaintiff alleged Gaston to be entitled. Between the 5tlf of March and the 1st of November, 1847, the defendant collected on the said bonds the sum of $607,68, and expended the same under orders of Lincoln County Court, towards the building of a public jail in Lincoln; and on the 1st day of November, 1847, the defendant had in his hands, as part of the said fund, the sum of $.230,30 in cash, and part of the said bonds remaining unpaid to the amount of $814,10 ; and then the present plaintiff demanded of him the sum of $948,12 2-3, as the- share of Gaston County, of the said fund unexpend-ed at the erection of that County; and afterwards the
 
 *307
 
 whole of the said sum of $814,10 was received and expended by the defendant under the orders of the County Court of Lincoln towards the building of the said Jail in that County. The plaintiff was duly appointed by the County Court of Gaston, at February Term, 1847, Treasurer of public buildings for that county, with special directions and authority to demand and receive the money to which that county became entitled under the before mentioned statutes; and, the defendant having refused to pay him any part of the sums demanded by him, he brought this action in April, 1848.
 

 It was agreed by the parties, that, if the Court should be of opinion the plaintiff was entitled to recover by reason of his first demand, there should be judgment for him for the sum of $943 12 2-3 with interest thereon from the 5th of March 1847, or for such other less sum as the Court might think the plaintiff entitled to recover; and if the Court should be of opinion the plaintiff was not entitled to recover thereon, but was entitled by reason of his second demand, that their judgment should be given for $542 53 1-3 with interest from the 1st of November 1847, or for such other less sum to which the plaintiff might be entitled : but that, if the Court should be of opinion the plaintiff was not entitled to recover any thing from the defendant, there should be judgment for the defendant, and that in each case the costs should follow the judgment. The Superior Court rendered judgment for the defendant, and the plaintiff appealed.— The point principally discussed at the bar was, as to validity of the grant to Gaston of money raised by order of the Court of Lincoln. Indeed, considering the two Counties as the real parties, one would think, that the object of the controversy was to have the rights of the Counties- declared, so that each might do or receive what pertains to it; and therefore that the parties should consider that the only material point. Upon it, the Court apprehends there is no doubt. Unquestionably, the legislature can divide an ex
 
 *308
 
 isting County, so as to make two, or unite two Counties, so-as to make one.. It is a political power, necessary to a convenient local police and also to the general welfare, and ‘seems to be inherent in the legislative authority, unless 'prohibited by the Constitution. There is no such prohibition in the Constitution of this State, and these powers have been habitually exercised by the legislature. Incidental to them is the further power of providing for the defraying of the necessary expenses arising out of County organization and the administration of County police. It may be true, that, upon the principle of the inviolability of property, consecrated by our fundamental law, and in the minds of our people, the legislature cannot direct funds, levied by one county or municipal corporation, from the uses of those who raised it to that of another wholly unconnected with them, But, that point need not be mooted, as it does not arise here, and it is not to be supposed, that there will ever be such-legislative action as will raise it. If, however, two counties», for example, be united by a new name, it is clear, that the-contributions of their citizens, then in the hands of county-officers, ought not to be lost by leaving the fund with the-Officers without any authority in the new County to-recover it. It is, then, a wholesome and necessary function of the,law — -making power to provide in this new state of things, for the accountability of the officers, having the funds, to-those to whom they originally belonged, and who remain, justly entitled to it, as the means of saving them from again imposing on themselves new levies to meet the indispensable expenditures of their new condition. By the same reason it must belong to the legislature, which makes two-Counties out of one, to make also a fair and reasonable division between them of any fund before raised by levies on inhabitants of both the counties in common, and to provide for enforcing payment thereof by those who have it in hand. That power is likewise necessary, and it is perfectly just, when fairly exercised. But it is said, it may be abused, and
 
 *309
 
 when it is, that the Courts are bound to interpose and protect the citizens from even legislative wrong; and that there •are here an apparent inequality and unreasonableness in the disposition of the fund. But the difficulty is, that it cannot be judicially perceived, that the provisions of the Statute are unreasonable and unjust. The reasonableness of the •enactments depends upon a variety of considerations, which ■may properly influence the mind of the legislature but eannot be judicially ascertained or acted on. It may depend much on the proportion of territory, population, and wealth falling within the respective counties, raising a presumption that a large part of the fund had been drawn from the property or people of one of the counties, an'd therefore ought to go to it. A 'material circumstance' may, also, be, that the expenditures on permanent public erections in that part of the territory, forming one of the counties, were greater than in the other, as in building a Court House, Jail, bridges or poor house. As the people of the new county constituted their quota to those purposes, it may be entirely just, that they should, upon the division, have a larger portion of a fund, happening to be on hand, than they contributed to that particular fund, in order to bring them up to an equality in respect to their public erections. It is, thus, a case, in which there is no certain measure of the shares the two counties ought to receive, but one for the exercise of a sound discretion by a just lawgiver ; and, of course, if there be an abuse of power in its exercise, it is like most other cases of such abuse, beyond judicial perception or redress — as, for example, in the case of taxation. The right of Gaston County to the fund, as against Lincoln, must therefore be sustained to the extent of the grant. Other questions were made: whether the action will lie, and, if so, for what sum there should be judgment. The opinion of the Court is, that it lies for any sum that was in the defendant’s hands, which belonged to Gas-ton, under the Statute,'and which, at the demand or at any
 
 *310
 
 time afterwards, the defendant ought to have paid to the plaintiff for Gaston. It was objected, that the defendant was the officer of Lincoln and bound to account to that' County for whatever money he received in his office, and to pay the same as the Court of that County might order; and therefore that an order of the justices was requisite to the completion of the plaintiff’s right. That is true in reference to a fund belonging to Lincoln. But the defendant’s duty in respect to the part which the act allots to Gaston, is not subject to the control of the justices of Lincoln. It may be that the defendant, on going out of office, should transfer the fund to his successor, if not before made directly liable to Gaston by suit or demand. But, in reference to the sum belonging to Gaston under the act, the defendant’s liability to Lincoln was discharged, and that, to Gaston arose by the statute, at all events upon the demand. For the legislative power to grant the thing, imports that of prescribing the mode of receiving or recovering it. In respect to the sum assigned to Gaston, the act makes the defendant the bailiff oí that county; and on his failure to pay it to the person appointed to receive it, the statute expressly gives to that person an action for it; which may be maintained as any other action given by statute for the benefit either of the party suing or of another. It was urged iurther, that, by the admissions in the case agreed, the plaintiff cannot recover either of the sums in
 
 numero,
 
 which he demanded, and this action for a different sum and one not demanded, will not lie. But it was not requisite that the plaintiff should demand a particular sum, in order to, have his action. The act does not fix an exact amount, but gives a certain proportion of a fund, that was in its nature uncertain. Even in an action of debt, less than the sum demanded in the declaration may in such a' case be recovered;
 
 Dowd
 
 v
 
 Seawell,
 
 3 Dev. 185. Much more can the sum recovered be different from that demanded
 
 in pais.
 
 The demand
 
 *311
 
 was not necessary to. entitle the plaintiff to any sum in particular; but, if at all, it was for the sole purpose of notice of the claim of Gaston, and of the plaintiff’s authority, to receive the money, so as to enable the defendant to pay without suit.
 

 It was next said, that the action cannot be maintained, because, without the defendant’s default, the fund consisted of bonds, when the demand was made for payment in money. But that does not answer the plaintiff’s case at the commencement of the suit. We are not to say, what-would have been the remedy at the time of the demand and refusal. In point of fact he waited after demand until the defendant had converted the securities into money or disposed of them as money for the use, of Lincoln; and, there-foie, the plaintiff was then entitled to recover in debt.
 

 But, upon the facts agreed, the precise sum due to Gas-ton cannot be ascertained, and, therefore, there cannot be judgment on the case in favor of either party. The reason is, that prior to the grant to Gaston, there was one to Catawba of so much of the fund as had been levied for building a Court House in Lincoln, and had been collected between March and the third Monday of November, 1842, from such citizens of Lincoln as, upon the division, fell into Catawba. The subsequent act in favor of Gaston, must receive the reasonable construction, which will let it stand consistently with the previous grant to Catawba; for it cannot be supposed the Legislature meant to interfere with the rights of Catawba, on which Gaston had no claim, nor, on the other hand,- meant that Lincoln should pay oveir again to Gaston the money, which it must have been assumed Lincoln had either then paid, 0i% at all events, was bound to pay to Catawba. The grant to Gaston, then, must be understood to be for two thirds of the fund raised for building a new Court House and Jail in Lincoln, after deducting them from the grant to Catawba. It is, therefore, immaterial to this controversy, whether Catawba has
 
 *312
 
 recovered or relinquished her portion — since, in effect, that was excepted out of the fund in the first place, and Gaston’s dividend comes out of the residue. Now, the amount thus excepted is undefined, so that it cannot be told what the residue is after the satisfaction of Catawba’s claim. The case agreed states only, that before the year 1842, the sum of $1200 was collected for both of the purposes of building a Court House and Jail in Lincoln, from all the citizens of Lincoln before the division then enacted. But it does not state whether there was any distinction between that part of the fund, which was to pay for building the Court House and that for the Jail; or, if so, how much was raised for one purpose and how much for the other. Nor does it state how much of the sum ot $ 1200, thus raised in 1842, for either or both of those purposes, was paid by those living on the Catawba side of the line. Before the Jury on
 
 nil debet,
 
 evidence may be given by the defendant on those points, so as to adjust the proper deduction to be made on account of the grant to Catawba; and, of the sum not thus shown to belong- to Catawba, be it more or less, the plaintiff ought to recover two thirds, provided it be within the sum demanded in the declaration, and also does not exceed the sum in the hands of the defendant. It is conjectured very confidently, that the sum, thus to be found due to .the plaintiff will exceed that demanded in the declaration, viz : $948, 12 2-3, which is also the larger sum, for which in any case, judgment was by the case agreed to be given for the plaintiff; and, therefore, it is regretted that the controversy cannot be terminated by a judgment for that sum at once. But it cannot be done; because the Court is unable to see certainly, that it would be right, by reason of the Vagueness of the statement in reference to the sum belonging to Catawba. It is true, the case states, that $1200 of the fund was spent in paying the debts of Lincoln before the act of 1846. But it does not appear that it was the same $1200 which was. collected in 1842, or that this last
 
 *313
 
 sum had been kept separated from the residue of the fund. Hence, we are unable to disconnect the claim of Catawba from the fund in the defendant’s hands, so as to see that out of it the plaintiff is absolutely entitled to any particular sum. The result is, that there cannot be judgment for the defendant, because it is certain, that he is indebted to the plaintiff and that there must be judgment against him for some amount; yet judgment cannot be given here against him, because, by reason of the imperfection of the case agreed, it cannot be ascertained in what sum in particular he is indebted. The judgment must, therefore, be. reversed, and the cause remanded with directions for a
 
 venire
 
 to try the issues.
 

 Pee Curiam. Judgment accordingly.